UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT SCHLOSSER,

                       *Plaintiff,*

        -against-

TIME WARNER CABLE INC. and TWC
ADMINISTRATION LLC,

                       *Defendants.*
-----------------------------------------------------------------X

Case No. 14-CV-9349 (WHP)(KKO)

**<u>MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

       A.     Plaintiff's Employment with the Company ................................................ 2

       B.     Plaintiff's Termination from the Company .............................................. 4

       C.     The Company does not Rehire Plaintiff ................................................... 4

       D.     The Company's Hiring Policies and Preferences .................................... 6

III.   ARGUMENT AND CITATION OF AUTHORITY ........................................... 7

       A.     The Standard for Summary Judgment ..................................................... 7

       B.     The *McDonnell Douglas* Burden-Shifting Analysis ................................ 8

              i.     Plaintiff Cannot Establish a Prima Facie Case of Discrimination ............. 9

              ii.    Defendants Have a Legitimate Non-Discriminatory Reason for not
                     Rehiring Plaintiff ..................................................................................... 11

              iii.   There Is No Evidence that Defendants' Legitimate Non-
                     Discriminatory Reason is Pretextual ....................................................... 13

IV.    CONCLUSION .................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*,
    72 F. Supp. 2d 350 (S.D.N.Y. 1999)..............................................................................7

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
    140 F. 3d 101 (2d Cir. 1998)..........................................................................................7

*Baranowski v. Cornell Univ.'s Soil, Crop, & Atmospherical Sciences
    Dept.*, No. 90-CV-1029, 1991 WL 85828 (N.D.N.Y. May 17, 1991) .....................11

*Chakraborty v. Town of Amherst, N.Y.*,
    No. 10-CV-516S, 2012 WL 268155 (W.D.N.Y. Jan. 30, 2012)........................13, 14

*Cifarelli v. Village of Babylon*,
    93 F.3d 47 (2d Cir. 1996)...............................................................................................7

*Cretella v. Liriano*,
    633 F. Supp. 2d 54 (S.D.N.Y. 2009).............................................................................9

*Gaffney v. Dep't of Info. Tech. & Telecomms.*,
    536 F. Supp. 2d 445 (S.D.N.Y. 2008).........................................................................12

*Gomez v. Metro. Dist.*,
    10 F. Supp. 3d 224, 242 (D. Conn. 2014)...................................................................11

*Gray v. AES Greenidge, LLC*,
    100 Fed. App'x 844 (2d Cir. 2004)..............................................................................14

*Mavrommatis v. Carey Limousine Westchester, Inc.*,
    476 Fed. Appx. 462 (2d Cir. 2011) ............................................................................14

*McKissick v. City of N.Y.*,
    707 F. Supp. 2d 336 (E.D.N.Y. 2010) ..........................................................................8

*Meyer v. State of N.Y. Office of Mental Health*,
    No. 12-CV-6202 (PKC), --- F. Supp. 3d ---, 2016 WL 1228603 (E.D.N.Y.
    Mar. 28, 2016)........................................................................................................10, 12

*Morris v. Ales Grp. USA, Inc.*,
    No. 04 CV 8239 (PAC)(THK), 2007 WL 1893729 (S.D.N.Y. June 29, 2007).............8, 13, 14

*Pink v. Bridgeport Bd. of Educ.*,
    323 F. Supp. 2d 326 (D. Conn. 2004)..........................................................................14

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)......................................................................................8

*Ruszkowski v. Kaleida Health Sys.*,
    422 Fed. App'x 58 (2d Cir. 2011).....................................................................8, 9, 11

*Sellick v. Agency-Castle Point*,
    No. 09 Civ. 6616 (DLC), 2010 WL 2813431 (S.D.N.Y. July 16, 2010).................................9

*Skalafuris v. City of New York, Dept. of Corrections*,
    No. 09 Civ. 15165(SAS), 2010 WL 4273286 (S.D.N.Y. Oct. 28, 2010) ..........................9, 11

*Spiegler v. Israel Discount Bank of N.Y.*,
    No. 01 Civ. 6364(WK), 2003 WL 21488040 (S.D.N.Y. June 25, 2003) ...............................10

*In re W. Xerox Litig.*,
    850 F. Supp. 1079 (W.D.N.Y. 1994) ...............................................................................10

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000).........................................................................................9, 13

*Wyatt v. Zuckerman*,
    No. 93 Civ. 8027LTSHBP, 2005 WL 525256 (S.D.N.Y. Mar. 7, 2005).........................12, 13

*Zahorik v. Cornell Univ.*,
    729 F.2d 85 (2d Cir. 1984).........................................................................................9

## Statutes

N.Y. Exec. Law § 296 ......................................................................................................8

<u>**MEMORANDUM OF LAW**</u>

I.    <u>**INTRODUCTION**</u>

      Plaintiff is a former Direct Sales Manager of Defendant TWCA Administration LLC and Time Warner Cable Inc. ("Defendants" or the "Company") who asserts claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and New York City Human Rights Law ("NYCHRL") in connection with his allegations that the Company discriminatorily refused to rehire him after he was laid off during a reorganization of the Company's sales groups.  Plaintiff's Complaint conveniently ignores two ***undisputed*** facts that are fatal to his case: (1) Plaintiff had a record of poor performance during his previous tenure at the Company, including being issued a final warning for widespread sales fraud occurring under his supervision by members of his sales team; and (2) of the 29 individuals the Company hired in the positions that Plaintiff applied for after his layoff, over 50% were over 40 years old, and almost 20% were in their fifties or sixties.  Given these undisputed facts, Plaintiff cannot establish a *prima facie* case of discrimination, nor can he establish that Defendants' reason for not rehiring him was pretextual.

      Given these undisputed facts, Plaintiff's claims fail at the outset because he cannot establish a *prima facie* case of age discrimination.  First, Plaintiff was not qualified for any of the positions he applied for due to his past performance issues at the Company—in particular, allowing pervasive sales fraud to occur under his watch, his lack of integrity and accountability, and his "sluggish" sales reporting, among other things.  Second, over 50% of the individuals Defendants hired for the positions at issue were over 40 years old, and almost 20% were over 50 years old. This fact alone rebuts any inference of age discrimination, resulting in Plaintiff's inability to establish a *prima facie* case.

1

Even if Plaintiff could establish a *prima facie* case, Defendants had a legitimate non-discriminatory reason for not rehiring him after his layoff.  Defendants chose not to rehire Plaintiff because: (1) his previous performance issues left him unqualified for the positions at issue; (2) Defendants had concerns that Plaintiff's presence would be disruptive to the sales group; and (3) Defendants believed that Plaintiff's previous failure to prevent sales fraud among entry-level salespeople would be a problem should he re-enter the Company's sales group at any level.  In addition, Plaintiff cannot establish that the Company's legitimate proffered explanation behind its hiring decisions is pretext for age discrimination, especially given the statistical evidence that over 50% of the individuals hired for the positions at issue were also over 40, and in light of the fact that Defendants hired no less than 140 individuals over 40 years old (24 of whom were Plaintiff's age or older) into their New York sales departments since Plaintiff's layoff.

Based on the above, Plaintiff's claims fail as a matter of law because he cannot establish a *prima facie* case of discrimination, and, even if he could, Plaintiff cannot show pretext in the face of Defendants' legitimate, non-discriminatory reason for not rehiring him.  Accordingly, TWC respectfully requests that the Court grant Defendants' Motion for Summary Judgment.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Employment with the Company

Plaintiff was hired in August 2006 as a Direct Sales Manager ("DSM") of residential sales in the College Point, New York Sales Department, managing Direct Sales Supervisors ("DSSs") and Direct Sales Representatives ("DSRs") who sold Defendants' products directly to customers. (Defendants' Statement of Material Facts ("SMF") ¶¶ 1-2.)  Seven DSSs reported directly to Plaintiff, each of whom oversaw a team of roughly 10 to 12 DSRs.  (SMF ¶ 3.)  Therefore, Plaintiff managed anywhere from 75 to 90 employees at any given time.  (SMF ¶ 4.)

2

In September 2009, Lisa Kerr, a DSS who reported directly to Plaintiff, emailed him, copying his supervisor, about suspected sales fraud that one of Plaintiff's DSR teams was engaged in. (SMF ¶ 5.) An investigation into these allegations validated Ms. Kerr's suspicions and revealed that widespread sales fraud was occurring under Plaintiff's supervision. (SMF ¶ 6.) As a result, the Company terminated the entire DSR team and their supervisor. (SMF ¶ 7.)

After the investigation, in November 2009, the Company issued Plaintiff a Final Written Warning ("FWW").[1] (SMF ¶ 8.) The FWW noted the following serious issues with Plaintiff's performance: (1) Plaintiff mismanaged his sales team by not implementing precautions or oversight to prevent sales fraud; (2) Plaintiff was not "'locked in' to the overall detail" necessary to perform as a successful manager; (3) Plaintiff exhibited a lack of "self-accountability and supervisor accountability," as well as "core managerial and leadership behaviors;" (4) Plaintiff did not adequately track or report the sales of his team "on a daily, weekly, and monthly basis," as required; and (5) Plaintiff struggled with analyzing, interpreting, and managing sales data as well as preparing reports and implementing Company policy and procedure. (SMF ¶¶ 11-15.) Plaintiff confirmed these issues in his deposition, admitting that his entire team of DSRs "were taking orders that were inappropriate and submitting them as their own." (SMF ¶ 16.)

---

[1] Per Company policy, once an employee receives a Final Written Warning, the next incident of poor performance or misbehavior will "result in termination of employment." (SMF ¶ 9.) A Final Written Warning does not "roll off" or expire. Rather, depending on the circumstances and "severity of the situation," an employee who receives an FWW could be terminated for the next offense even if it occurred several years later. (SMF ¶ 10.)

3

Plaintiff's 2009 Performance Review reflected the same issues that resulted in the FWW. Plaintiff received the subpar overall rating of "Partially Meets Expectations," and received the same subpar rating in the competencies of "Excellence" and "Integrity." (SMF ¶ 17.)  Specifically, the Performance Review explained that: (1) Plaintiff did not meet or exceed his sales goals; (2) Plaintiff's self and supervisory accountabilities "were very much compromised;" (3) Plaintiff "ha[d] been perceived as unapproachable to speak with" due to his harsh, abrupt behavior, and security in two of Defendants' facilities submitted complaints about him; and (4) Plaintiff was "sluggish" in timely and accurately reporting the sales metrics of his team.  (SMF ¶¶ 18-22.)

**B.   Plaintiff's Termination from the Company**

In 2010, the Company reduced its residential sales group from six to two regions.  (SMF ¶ 23.)  With that reduction, the Company no longer needed a DSM to run the College Point Sales Department's residential sales.  (SMF ¶ 24.)  As a result, Defendants eliminated Plaintiff's position and laid him off.  (SMF ¶ 25.)  He was 56 years old at the time.  (SMF ¶ 26.)  Despite his poor performance, the Company considered plaintiff eligible for rehire simply due to the fact that his termination was based upon a Company reorganization.  (SMF ¶ 27.)  The Company advised Plaintiff upon his termination that he was "free to review positions that are posted [by the Company], and the organization would determine [his] eligibility ***based on prior performance*** and skill set." (SMF ¶ 28 (emphasis added).)  Plaintiff received a severance payment and benefits in connection with his termination.  (SMF ¶ 29.)

**C.   The Company does not Rehire Plaintiff**

In February 2011, Plaintiff applied for a Sales Manager position (the "Concierge Sales Manager Position") in the Company's newly-created "Concierge" sales group.  (SMF ¶ 30.) Defendants designed the Concierge group to cater to their best and most loyal customers in multiple-dwelling units ("MDUs").  (SMF ¶ 31.)  Therefore, employees in the Concierge group

4

required a different (and stronger) set of abilities than the average DSM, DSS, or DSR in residential sales:

> Q:  What is a concierge sales position?
> A:  Concierge sales position required a skill level of being able to get into vertical markets that cannot rely on direct sales skills, . . . somebody that understands how to get into the buildings and be able to create relationships with those building managers.

(SMF ¶¶ 32-33.)  The Concierge Sales Manager Position that Plaintiff applied for was therefore different than his former DSM position.  (SMF ¶ 34.)  Additionally, Concierge Sales Managers were required to have a history of stellar performance and credentials because they would be dealing with the Company's best customers.  (SMF ¶ 35.)  The Company did not select Plaintiff to interview for this position due to his prior poor performance as a Manager.  (SMF ¶ 36.)  Defendants ultimately hired an applicant for this position who had previous experience and a strong track record of performance in departments similar to the Company's Concierge group.  (SMF ¶ 37.)

Over the course of the next 18 months, Plaintiff submitted applications for seven other job postings at the Company within and outside the Concierge group, including supervisor and entry-level sales positions.  (SMF ¶¶ 38, 48.)  In August 2012, Plaintiff was selected to interview for a Territory Sales Representative ("TSR") position (the "TSR Position"), the Concierge group's equivalent to a DSR.  (SMF ¶ 39.)  However, Plaintiff interviewed poorly.  (SMF ¶ 40.)  That, coupled with his previous performance issues, led the Company to conclude that Plaintiff was not qualified for the position.  (SMF ¶ 41.)  This, combined with Defendants' concern that hiring Plaintiff, a former DSM, in this entry-level role would be disruptive to the sales force, led the Company to pass on Plaintiff for this position.  (SMF ¶ 42.)

Plaintiff alleges that Defendants did not hire him for any of the positions he applied for due

to his age.  There is no evidence to support that assertion evidenced by the fact that, of the 29 individuals the Company hired for the eight job postings at issue, ***over 50% were age 40 or above***. (SMF ¶ 49.)  Moreover, nearly 20% were in their fifties or sixties.  (SMF ¶ 49.)  Further, since early 2011, the Company has hired *at least* 140 individuals over the age of 40 for the sales positions Plaintiff applied for, including 24 that were Plaintiff's age or older.  (SMF ¶ 50.)

### D.    The Company's Hiring Policies and Preferences

Defendants' policies and practices do not provide preferential treatment to former employees over applicants who had not previously worked for the Company.  (SMF ¶¶ 51-52.) Two of the Company's senior executives confirmed this Company practice.  Concetta Ciliberti, the Company's Vice President of Human Resources for New York City and the Northeast Region, testified:

> Q: But, generally speaking, someone whose position who was eliminated would be considered for rehire?
> A: Yes.
> Q: Is there a preference for hiring someone who has prior Time Warner experience?
> A: No.

(SMF ¶ 51.)  Jim Molloy, Defendants' Director of Talent Acquisition and Movement, validated Ms. Ciliberti's testimony:

> Q: Is there a preference in hiring someone who has prior experience with Time Warner Cable?
> A: No.
> Q: So no preference?
> A: No preference.

(SMF ¶ 52.)

Moreover, as Mr. Molloy testified:

> A: . . . [The Company] look[s] at everybody's entire past performance.  And even though, without a doubt, anybody who leaves and is eligible to be rehired, ***we will definitely take into consideration past performance along with the existing pool*** that we are interviewing for those roles . . . .

(SMF ¶ 53 (emphasis added).)

Therefore, it is undisputed that Plaintiff's previous tenure with Defendants would not and should not have given him an advantage over other applicants. (SMF ¶¶ 51-53.) Indeed, given that the Company takes into account past performance, Plaintiff's past performance issues hurt his chances of obtaining re-employment from the Company. (SMF ¶¶ 11-22, 53.)

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Standard for Summary Judgment

The Second Circuit "recognizes the value of summary judgment to expeditiously dispose of meritless litigation," because "[t]he mechanism of summary judgment promotes judicial economy by preventing further litigation on an issue with an unalterably predetermined outcome." *AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements*, 72 F. Supp. 2d 350, 352-53 (S.D.N.Y. 1999). Summary judgment is appropriate "if the moving party can show that there is no 'genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F. 3d 101, 107 (2d Cir. 1998) (quoting FED. R. CIV. P. 56(c)). "Once the movant has demonstrated that no material facts are in dispute, the non-movant must set forth specific facts indicating a genuine issue for trial exists in order to avoid the granting of summary judgment." *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). "[T]he mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue." *AIU N. Am., Inc.*, 72 F. Supp. 2d at 353. Moreover:

> [t]he Court **must** grant summary judgment for defendant where plaintiff's evidence is "merely colorable, conclusory, speculative, or not significantly probative." . . . A plaintiff cannot create a disputed issue of fact by offering "conclusory allegations, conjecture, and speculation." Instead, to survive summary judgment, plaintiff's

7

facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."

*Morris v. Ales Grp. USA, Inc.*, No. 04 CV 8239 (PAC)(THK), 2007 WL 1893729, at *3 (S.D.N.Y. June 29, 2007) (granting summary judgment in favor of defendant) (emphasis added) (quoting *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003); *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981); *White v. Lenox Hill Hosp.*, No. 02 CI. 5749(WHP), 2004 WL 2337016, at *1 (S.D.N.Y. Oct. 18, 2004) (Pauley, J.).)

## B.    The *McDonnell Douglas* Burden-Shifting Analysis

"The ADEA prohibits employers from discriminating against workers aged 40 or older on the basis of their age." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).   Likewise, the NYCHRL deems it an "unlawful discriminatory practice . . . [f]or an employer . . . , because of an individual's age . . . to refuse to hire or employ or to bar or to discharge from employment such individual[.]"   15 N.Y. EXEC. LAW § 296.   Courts in the Second Circuit analyze both ADEA claims and NYCHRL age claims under the *McDonnell Douglas* framework. *Id.* (applying burden-shifting analysis when direct evidence insufficient); *Ruszkowski v. Kaleida Health Sys.*, 422 Fed. App'x 58, 60 (2d Cir. 2011) (affirming summary judgment in failure to hire case where employee failed to establish *prima facie* case); *McKissick v. City of N.Y.*, 707 F. Supp. 2d 336, 347 (E.D.N.Y. 2010) (analyzing NYCHRL under *McDonnell Douglas* framework).

Pursuant to this framework, to establish a *prima facie* case of age discrimination, Plaintiff must present evidence that: (1) he was a member of the protected class; (2) he was qualified for the job for which he applied; (3) he was rejected for the position; and (4) the circumstances surrounding that action raised an inference of age discrimination. *Skalafuris v. City of New York, Dept. of Corrections*, No. 09 Civ. 15165(SAS), 2010 WL 4273286, at *3 (S.D.N.Y. Oct. 28, 2010)

8

(granting summary judgment in failure to hire case where employee failed to establish *prima facie* case).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for not hiring (or rehiring) the plaintiff. *Cretella v. Liriano*, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009). "This burden is one of production, not persuasion." *Id.* "Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). At that point, "the plaintiff may offer evidence that the defendant's ostensibly legitimate reasons were not genuinely held but were merely a pretext for discrimination." *Zahorik v. Cornell Univ.*, 729 F.2d 85, 92 (2d Cir. 1984). Importantly, "the burden of persuasion remains upon the plaintiff at all times." *Id.*

### i.  *Plaintiff Cannot Establish a* **Prima Facie** *Case of Discrimination*

Plaintiff cannot establish a *prima facie* case of age discrimination for at least two reasons. First, Plaintiff is unable to show that the circumstances surrounding the Company's refusal to hire him give rise to an inference of age discrimination. *Sellick v. Agency-Castle Point*, No. 09 Civ. 6616 (DLC), 2010 WL 2813431, at *7 (S.D.N.Y. July 16, 2010) (granting summary judgment in failure to hire case where no evidence giving rise to inference of age discrimination). Second, he cannot demonstrate that he was qualified for the positions he applied for given his previous performance issues. *Ruszkowski v. Kaleida Health Sys.*, 422 Fed. App'x 58, 60 (2d Cir. 2011) (affirming summary judgment where plaintiff failed to establish *prima facie* case because not qualified for position at issue). Defendants are therefore entitled to summary judgment in their favor at the outset.

The circumstances and statistics supporting Defendants' decision not to rehire Plaintiff do

not raise an inference of discrimination.  *See In re W. Xerox Litig.*, 850 F. Supp. 1079, 1084 (W.D.N.Y. 1994) (finding statistical evidence rebutted plaintiff's unsupported allegations of discrimination).  Indeed, the Company's hiring record is incontrovertible in that regard, as it has hired over 140 individuals over 40-years old in its New York sales departments, many of whom were the same age or older than Plaintiff.  (SMF ¶ 50.)  Moreover, for the specific jobs Plaintiff applied for, 15 of the 29 individuals the Company hired were over age 40, and five of the 29 were in their fifties or sixties.  (SMF ¶ 49.)  This evidence directly rebuts any inference of age discrimination.  *See Spiegler v. Israel Discount Bank of N.Y.*, No. 01 Civ. 6364(WK), 2003 WL 21488040, at *11 (S.D.N.Y. June 25, 2003) ("Where no evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a *prima facie* case of discrimination."); *Meyer v. State of N.Y. Office of Mental Health*, No. 12-CV-6202 (PKC), --- F. Supp. 3d ---, 2016 WL 1228603, at *15 (E.D.N.Y. Mar. 28, 2016) ("[T]here is an inference against discrimination where the individual hired . . . is within the same protected class" as plaintiff failure to hire case).

    In addition, Plaintiff alleges that he was qualified for each of the eight positions that he applied for.  (Carr Aff., Exh. I, Compl. ¶ 32.)  His theory, however, ignores undisputed facts compelling the opposite conclusion.  (SMF ¶¶ 41, 43, 46.)  With respect to the TSR position, the manager who interviewed Plaintiff concluded that Plaintiff was ***not*** qualified, despite his previous employment with the Company:

> Q:  Did you relay that [Plaintiff] was underqualified [for the TSR position]?
> A:  To whom?
> Q:  To your supervisors.
> A:  I did.
> Q:  And what was your basis for saying he was underqualified?
> A:  His answers to the questions that we asked.

(SMF ¶¶ 43-44.)  Moreover, the Company did not elect to interview Plaintiff for other positions

because it had legitimate concerns that Plaintiff's lack of integrity and his past disciplinary and supervisory issues would carry over to any position, whether managerial, supervisory, or entry-level. (SMF ¶ 45.) For that reason, Plaintiff's past poor performance as a DSM in residential sales rendered him unqualified, regardless of his sales background. (SMF ¶¶ 46.) *See Ruszkowski*, 422 Fed. App'x at 60 (granting summary judgment because plaintiff unable to establish he was qualified for position); *Baranowski v. Cornell Univ.'s Soil, Crop, & Atmospherical Sciences Dept.*, No. 90-CV-1029, 1991 WL 85828, at *4 (N.D.N.Y. May 17, 1991) (same).

Plaintiff cannot establish a *prima facie* case in light of this undisputed record evidence. On that basis, Plaintiff's discrimination claims fail at the outset.

### ii.   *Defendants Have a Legitimate Non-Discriminatory Reason for not Rehiring Plaintiff*

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of age discrimination (he cannot), the Company had a legitimate non-discriminatory reason not to rehire him. *Skalafuris*, 2010 WL 4273286, at *4. To establish a legitimate non-discriminatory reason, Defendants do not need to prove that the individuals hired for the positions that Plaintiff applied for were "actually the more qualified candidate[s]; [they] must only adduce proof that [their] selection[s] [were] not based on discriminatory motive." *Gomez v. Metro. Dist.*, 10 F. Supp. 3d 224, 242 (D. Conn. 2014) (granting summary judgment in failure to hire case, finding that employer's determination that hired individual's interview was superior to plaintiff's was legitimate non-discriminatory reason for decision not to hire plaintiff). In the hiring context, "'an employer's judgment in selecting and applying subjective criteria may be poor, and it may be erroneous as long as it is not discriminatory' and the nondiscriminatory reasons 'need not be well advised' but merely truthful and not pretext for unlawful discrimination." *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 469 (S.D.N.Y. 2008) (quoting *Gilman v. Runyon*, 865

11

Supp. 188, 193 (S.D.N.Y. 1994)).

Regarding the positions at issue, Defendants simply did not want to rehire Plaintiff given his significant performance issues during his previous employment with the Company—specifically his lack of integrity, allowance of sales fraud on his watch, inattention to detail, inability to take accountability for his own actions or those of his team members, and his "sluggish" sales reporting.  (SMF ¶¶ 11-22, 36, 42, 45, 47.)  *See Meyer*, 2016 WL 1228603, at *15 (granting summary judgment in failure to rehire case where evidence of dissatisfaction with performance during previous tenure); *Wyatt v. Zuckerman*, No. 93 Civ. 8027LTSHBP, 2005 WL 525256, at *12 (S.D.N.Y. Mar. 7, 2005) (holding negative performance evaluations during employment with defendant's predecessor was legitimate non-discriminatory reason for failure to hire).  These reasons applied equally to managerial and entry-level sales positions.  Indeed, Defendants had concerns that Plaintiff's presence would be disruptive to the sales group and believed that Plaintiff's failures as a sales manager in preventing fraud among entry-level salespeople would be a problem should he be hired to perform those same duties.  (SMF ¶ 47.)  It is patently clear that Defendants' hiring decisions had nothing to do with Plaintiff's age because over 50% of those hired for the positions in question were over 40 years old, and nearly 20% were Plaintiff's age or older.  (SMF ¶ 49.)  *See Gaffney*, 536 F. Supp. 2d at 465 ("It is not the place of courts to substitute their judgment for that of employers, and the courts 'must respect employers' unfettered discretion to choose among qualified candidates.'").

Thus, Defendants have articulated a non-discriminatory reason for not rehiring Plaintiff. *See Weinstock*, 224 F.3d at 42 ("Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture.").

### iii. There Is No Evidence that Defendants' Legitimate Non-Discriminatory Reason is Pretextual

Plaintiff cannot establish that Defendants' legitimate non-discriminatory reason for not rehiring him was pretext.  "To get to the jury, '[i]t is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." *Weinstock*, 224 F.3d at 42.  With respect to age claims under the ADEA or NYCHRL, "it is not enough to show that age was a contributing or motivating factor of the [failure to rehire]; ***the plaintiff must be able to show that age was the 'but-for' cause of the adverse action***." *Chakraborty v. Town of Amherst, N.Y.*, No. 10-CV-516S, 2012 WL 268155, at *4 (W.D.N.Y. Jan. 30, 2012) (emphasis added) (granting summary judgment on failure to rehire claim).

Here, "[Plaintiff] makes conclusory allegations of pretext, [but] those allegations are not supported by a single piece of evidence other than [Plaintiff's] own opinions, conjecture and speculation.  A plaintiff's subjective view of [his] performance does not create a genuine issue of material fact." *Morris*, 2007 WL 1893729, at *10; *see also Wyatt*, 2005 WL 525256, at *12 ("Such conclusory statements and subjective opinions of [plaintiff's] own and others' qualifications are insufficient to create a triable issue of fact as to whether [defendant's] decision not to offer him employment was the product of intentional discrimination.").  Plaintiff's theory that the Company "fail[ed] to hire Plaintiff for multiple positions for which he was highly qualified, and instead, hired younger less qualified individuals," is conclusory, speculative, and lacks evidentiary support. (Carr Aff., Exh. I, Compl. ¶¶ 48, 58.)  Rather, the undisputed record evidence disproves Plaintiff's theory.

Further, the majority of individuals that the Company hired into the eight positions at issue were over the age of 40, with many over the age of 50.  (SMF ¶ 49.)  Because of this fact, and because the Company hired over 140 individuals over age 40 for the sales department since

13

Plaintiff left the Company's employ (SMF ¶ 50), it is impossible for Plaintiff to show pretext. *Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 Fed. Appx. 462, 465 (2d Cir. 2011) (finding no evidence of pretext where employer hired employees over 40 for similar positions); *Gray v. AES Greenidge, LLC*, 100 Fed. App'x 844, 846 (2d Cir. 2004) (disregarding plaintiff's allegations of pretext of age discrimination  because half of defendant's new hires were over 40 years old); *Pink v. Bridgeport Bd. of Educ.*, 323 F. Supp. 2d 326, 331 (D. Conn. 2004) (finding no pretext of age discrimination where some individuals hired over plaintiff were near her age).

As discussed, *supra*, Plaintiff was not qualified for the positions at issue.  Nevertheless, "even if [Plaintiff] had presented evidence to corroborate [his] superior qualifications, and [the hired individuals'] inferior qualifications, which [he] has not, evidence of a poor hiring decision, alone, does not create a genuine issue of material fact."  *Morris*, 2007 WL 1893729, at *10. Plaintiff, therefore, cannot stand on his allegation of superior qualifications to support a finding of pretext.

For all of the above reasons, Plaintiff cannot show that age was the "but-for cause" of Defendants' decision to not rehire him, and therefore, his claim fails.  *See Chakraborty*, 2012 WL 268155, at *4 (granting summary judgment on failure to rehire claim).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor and against Plaintiff.

Dated:  August 31, 2016.

/s/ Shawna M. Miller
J. Scott Carr, Esq. (admitted pro hac vice)
Shawna M. Miller (admitted pro hac vice)
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Tel: (404) 400-7300
Fax: (404) 400-7333
Email:  scarr@kcozlaw.com
          smiller@kcozlaw.com

Kenneth A. Bloom
GARTNER + BLOOM P.C.
801 Second Avenue, 15th Fl.
New York, NY 10017
T: (212) 759-5800
F: (212) 759-5842
Email:  ken@gbglaw.com

*Attorneys for Defendants Time Warner
Cable Inc. & TWC Administration LLC*

TO:   Neil Michael Frank
       Frank & Associates
       500 Bi-County Boulevard, Suite 465
       Farmingdale, NY 11732
       *Attorney for Plaintiff*