UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
ROBERT SCHLOSSER,             :
                              :     14cv9349
            *Plaintiff*,       :
                              :     OPINION & ORDER
       -against-              :
                              :
TIME WARNER CABLE INC. and    :
TWC ADMINISTRATION LLC,       :
                              :
            *Defendants*.      :
------------------------------X

WILLIAM H. PAULEY III, United States District Judge:

Defendants Time Warner Cable Inc. and TWC Administration LLC ("Time Warner") move for summary judgment dismissing this action. For the reasons that follow, Time Warner's motion is granted.

BACKGROUND

Plaintiff Robert Schlosser brings this employment discrimination action, pursuant to the Age Discrimination in Employment Act ("ADEA") and the New York City Human Rights Law ("NYCHRL"), asserting that Time Warner refused to hire him on the basis of his age after laying him off from his previous position.

I.  Schlosser's Tenure as Direct Sales Manager

In August 2006, Time Warner hired Schlosser as a Direct Sales Manager for its College Point, New York residential sales department. In that capacity, he was responsible for managing Direct Sales Supervisors and Direct Sales Representatives who promoted Time Warner's products. (Statement of Material Facts ("SMF"), ECF No. 55, at ¶¶ 1–2.) During the course of his employment, Schlosser directly supervised seven Direct Sales Supervisors, each of

whom oversaw a team of approximately 10–12 Direct Sales Representatives. (SMF ¶ 3.) In total, Schlosser managed 75 to 90 employees during the relevant period. (SMF ¶ 4.)

In September 2009, a Direct Sales Supervisor emailed Schlosser informing him that one of Schlosser's Direct Sales Representative teams had allegedly engaged in sales fraud. (SMF ¶ 5.) A subsequent investigation validated those suspicions and revealed that widespread sales fraud had occurred under Schlosser's watch. (SMF ¶ 6.) Time Warner consequently terminated that entire sales team and its supervisor. (SMF ¶ 7.)

In November 2009, following the sales fraud investigation, Time Warner issued a Final Written Warning to Schlosser, admonishing him for his purported failure to implement measures that could have prevented the sales fraud. The Final Written Warning also cited his inability to be "'locked in' to the overall detail" expected of successful managers; his lack of "self-accountability and supervisor accountability" and "core managerial and leadership behaviors"; his failure to adequately track or report his team's sales on a regular basis; and his difficulty analyzing, interpreting, and managing sales data, preparing reports, and implementing company policy and procedure. (SMF ¶¶ 11–15.)

By year end, Schlosser's performance review reflected many of the same issues memorialized in the Final Written Warning. As a result, Schlosser received an overall rating of "Partially Meets Expectations," and average reviews in sub-categories titled "Excellence" and "Integrity." (SMF ¶ 17.) Time Warner's year-end evaluation identified a litany of performance issues: that Schlosser failed to meet or exceed his sales goals; that his supervisory accountabilities were compromised; that he was perceived as unapproachable due to his harsh and abrupt demeanor; that the security teams at two of Time Warner's facilities had filed

complaints against him; and that he was slow and inaccurate in reporting his team's sales metrics. (SMF ¶¶ 18–22.)

In 2010, Time Warner reduced its residential sales group from six regions to two, eliminating the College Point, New York sales department, and obviating the need for a Direct Sales Manager. (SMF ¶ 24.) As a result, Time Warner laid Schlosser off and gave him a severance and benefits package. (SMF ¶¶ 25, 29.) At the time of his termination, Schlosser was 56 years old. (SMF ¶ 27.) Despite losing his position in a company reorganization, Time Warner told Schlosser that he could apply for any other open positions at the company. (SMF ¶ 27.) Time Warner informed Schlosser that it would consider prior performance and skill sets in determining his eligibility for such positions. (SMF ¶ 28.)

II. Concierge Sales Manager Position

Nearly a year later, Schlosser applied for a Sales Manager position in the Concierge Sales Group. (SMF ¶ 30.) The position required exceptional skills and abilities—more so than those required for ordinary Direct Sales Manager, Direct Sales Supervisor, or Direct Sales Representative positions—since the Concierge Department catered to, and regularly interfaced with, Time Warner's best and most loyal customers. (SMF ¶¶ 31–33, 35.) Ultimately, Time Warner declined to interview Schlosser based on his poor performance as a Direct Sales Manager, opting instead to hire a candidate with a stronger record of performance from a department similar to the Concierge Sales Group. (SMF ¶ 36–37.)

III. Territory Sales Representative Position

Over the next eighteen months, Schlosser applied for seven other job postings at Time Warner, both in and out of the Concierge Sales Group, and for supervisory and entry-level sales positions. (SMF ¶¶ 38, 48.) In August 2012, Schlosser interviewed for a Territory Sales

Representative position, an entry level job in the Concierge Sales Department similar to the Direct Sales Representative job in the Residential Sales Department. (SMF ¶ 39.) However, Schlosser interviewed poorly. (SMF ¶ 40.) Coupled with his previous performance issues and Time Warner's concern that hiring a former manager into an entry level position could potentially disrupt the sales force, Time Warner declined to offer Schlosser the position. (SMF ¶¶ 40–42.)

Time Warner also opted not to interview him Schlosser for several other positions based on his past disciplinary, supervisory, and performance issues. (SMF ¶¶ 45–46.) Since 2011, Time Warner hired at least 140 individuals aged 40 years or older for sales positions to which Schlosser had applied. (SMF ¶ 50.) But of the twenty-nine individuals who were hired into those positions during the relevant period, twenty-six were younger than Schlosser. (Counterstatement of Material Facts ("CSMF"), ECF No, 57, at ¶ 50.)

## STANDARD

I. <u>Summary Judgment</u>

Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The court must assess all evidence in the light most favorable to the non-movant, and draw all reasonable inferences in favor of that party. <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 122 (2d Cir. 2004).

The "mere existence of a factual dispute between parties does not preclude summary judgment when the dispute is not genuine or when the disputed facts are immaterial. A

disputed fact is immaterial when the outcome of the case remains the same regardless of the disputed issue." AIU N. Am., Inc. v. Caisse Franco Neerlandaise de Cautionnements, 72 F. Supp. 2d 350, 353 (S.D.N.Y. 1999). Moreover, a court must grant summary judgment for a defendant where the plaintiff's evidence is "merely colorable, conclusory, speculative, or not significantly probative." Morris v. Ales Grp. USA, Inc., 2007 WL 1893729, at *3 (S.D.N.Y. June 29, 2007) (internal quotation marks and citations omitted). In order to survive summary judgment, the facts and evidence offered by plaintiff must be "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Morris, 2007 WL 1893729, at *3.

II.  McDonnell Douglas

Employment discrimination claims are subject to several burden-shifting analyses under the McDonnell Douglas framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–805 (1973). To establish a prima facie case of employment discrimination, the plaintiff bears the burden of producing evidence that (1) he was a member of a protected class; (2) he was qualified for the job to which he applied; (3) he was rejected for the position; and (4) the circumstances surrounding that action raised an inference of age discrimination. Skalafuris v. City of New York Dept. of Corrections, 2010 WL 4273286, at *3 (S.D.N.Y. Oct. 28, 2010). Once a prima facie case is established, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for not hiring the plaintiff. Cretella v. Liriano, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009). After a non-discriminatory reason is proffered, the "presumption of discrimination arising with the establishment of the prima facie case drops from the picture." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). At this point, the plaintiff "may offer evidence that the defendant's ostensibly legitimate reasons were not

genuinely held but were merely a pretext for discrimination." Zahorik v. Cornell Univ., 729 F. 2d 85, 92 (2d Cir. 1994).

## DISCUSSION

I. ADEA

  A. Prima Facie Claim of Age Discrimination

As an initial matter, the parties do not appear to contest two of the four factors of the prima facie test—that Schlosser, 56 years old at the time of his termination, is a member of a protected class, and that he was rejected for the positions to which he applied. Time Warner, however, contends that the absence of two other factors—circumstances giving rise to an inference of discrimination, and Schlosser's lack of qualifications for each position—warrant summary judgment.

Schlosser relies principally on two facts in his attempt to raise an inference of age discrimination. First, he contends that after being told that his Direct Sales Manager position would be eliminated due to a restructuring, his position was re-posted for other applicants and eventually filled by an employee who was substantially younger. (Plaintiff's Memo. of Law in Opposition to Summary Judgment ("Opp."), ECF No. 56, at 15.) That argument, however, is belied by the record. His former Direct Sales Manager position in the Residential Sales department was never re-posted. Rather, the undisputed fact is that Schlosser applied for a "Sales Manager Position" within Time Warner's "newly-created 'Concierge' sales group." (SMF ¶ 30.)

Schlosser argues that the managerial position in the Concierge Sales Department was the "exact position" he previously held because "it [] had the same reporting structure" and "was called a 'direct sales manager' position." (CSMF ¶ 34.) But that is an immaterial dispute

of fact. The Concierge Sales Manager position required the candidate to interface with a different clientele, undertake different responsibilities, and manage varying expectations. Indeed, Schlosser does not dispute that "[e]mployees in the Concierge group required a different (and stronger) set of abilities than the average [Direct Sales Manager], DSS, or DSR in residential sales." (SMF ¶¶ 30–32.) The positions were materially different in all but name.

The second fact that Schlosser raises to establish an inference of age discrimination is that twenty-six of twenty-nine open positions to which he applied were filled by individuals who were substantially younger than him. This argument has more traction. The ADEA "prohibits discrimination on the basis of age and not class membership[;] the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). Courts have inferred age discrimination in cases where the age gap between a plaintiff and his replacement, or others hired by the defendant, is as little as three years to as many as twenty-three years. See D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193 (2d Cir. 2007) (hiring a 47-year old applicant and 42-year old applicant over a 50-year old applicant); Balut v. Loral Elec. Sys., 166 F.3d 1199 (2d Cir. 1998) (replacing 57-year old employee with a 47-year old employee); Framularo v. Bd. of Educ. of the City of Bridgeport, 549 F. Supp. 2d 181 (D. Conn. 2008) (plaintiff was between seven and twenty-three years older than selected applicants).

Here, the record indicates that twenty-six of twenty-nine individuals hired to positions for which Schlosser applied were substantially younger—at least eleven were between the ages of 25 and 35; six were between the ages of 36 and 41; seven were between the ages of 42 and 45; and five were 50 years or older. (Declaration of Patricia L. Boland, ECF No. 58, Ex.

M, Chart of Individuals Chosen; Ex. N, at TWC000499–TWC000764.) At the time Schlosser applied for these positions, he was between 56 and 58 years old. Accordingly, the age gaps between Schlosser and the other hired applicants support an inference of age discrimination.

Schlosser also has demonstrated enough to establish that he was qualified for every position. There is no material dispute that Schlosser met the minimum education and experience requirements for each position. Based on his experience and qualifications as a former manager, he was qualified for the entry or mid-level positions to which he applied. At this juncture in the McDonnell Douglas analysis, Schlosser has "done enough to satisfy his minimal burden." Jimenez v. City of New York, 605 F. Supp. 2d 485, 521 (S.D.N.Y. 2009); Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) (the qualification requirement is "minimal" and "de minimis"). That Schlosser interviewed poorly—or that prior performance issues later disqualified him from consideration—are issues to be considered in determining whether Time Warner had a non-discriminatory basis to make an adverse employment decision, not in ascertaining whether Schlosser has established a prima facie case.

B. Non-Discriminatory Reason Not to Hire

Under the second phase of the McDonnell Douglas framework, Time Warner must demonstrate that its refusal to hire Schlosser was based on a non-discriminatory reason. Time Warner "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if [Time Warner's] evidence raises a genuine issue of fact as to whether it discriminated against [Schlosser]." Cooper v. State of Connecticut Pub. Defender's Office, 280 Fed. Appx. 24, 25 (2d Cir. 2008) (citations omitted). "To accomplish this, [Time Warner] must clearly set forth, through the introduction of admissible evidence, the reasons for

[Schlosser's] rejection. The explanation provided must be legally sufficient to justify a judgment for [Time Warner]." Cooper, 280 Fed. Appx. at 25.

Time Warner's non-discriminatory reason rests soundly on Schlosser's poor performance as Direct Sales Manager. Schlosser's Final Written Warning and his mediocre 2009 performance review suggest a reasonable, legitimate basis to doubt whether Schlosser was the best candidate for any of the positions to which he applied. Notwithstanding his experience and qualifications, Time Warner had no obligation to hire, let alone interview, him for any of the positions. Here, the company's decision not to hire is rooted, in part, in the sales fraud incident that occurred under his watch as supervisor, and other performance issues relating to his inability to hit sales figures, untimely and inaccurate sales reporting, complaints about him filed by security teams from two of Time Warner's facilities, and a general reluctance to be held accountable. (SMF ¶¶ 11–22, 36, 42, 45, 47.) This evidence sufficiently rebuts the presumption raised by Schlosser's prima facie claim.

    C. Non-Discriminatory Reason Is Not Pretext

Once an employer has articulated a non-discriminatory reason for the adverse employment action, it is entitled to summary judgment unless the employee can point to evidence reasonably supporting a finding of prohibited discrimination. See James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). In other words, Schlosser must put forward evidence that these non-discriminatory reasons served as "mere pretext for actual discrimination." Weinstock, 224 F.3d at 42. The evidence must "support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." Weinstock, 224 F.3d at 42.

The record is devoid of any evidence to show that Time Warner offered pretextual, non-discriminatory reasons to conceal the sole, but-for reason it refused to hire Schlosser—his age. Schlosser claims that Time Warner's reliance on his previous performance issues—in spite of his thirty-nine years of experience and his "far superior" qualifications—constitutes pretext. But the documentary evidence in the record dispels any notion that Schlosser's age was the sole, controlling reason why he was not hired. Schlosser's Final Written Warning and previous performance review sufficiently substantiate Time Warner's view that Schlosser was not the best candidate for the positions to which he applied. Setting aside the supervisory and managerial shortcomings memorialized in both the Final Written Warning and performance review, Schlosser was generally perceived by others at the company as "unapproachable to speak with" due to his harsh demeanor. (SMF ¶ 20.) That fact only bolsters Time Warner's non-discriminatory, discretionary decision not to hire Schlosser.

Moreover, Schlosser claims that he was never given a fair interview for the Territory Sales Representative position—namely because it lasted for no more than thirty minutes and because he was never asked about his real estate experience. (CSMF ¶ 40.) But of the little that can be gleaned from the interview—that Schlosser's answers "did not help [the interviewer] visualize [that] he would be successful in the concierge's position" (Declaration of J. Scott Carr, ECF No. 52, Ex. G, Shakhmurov Deposition, at 24:14–25:13)—Time Warner concluded that the position was not an appropriate fit for Schlosser. Coupled with Schlosser's prior performance issues, and Time Warner's judgment that hiring a former supervisor into an entry-level position could create issues within the ranks (SMF ¶ 47), Time Warner reasonably opted to pass on Schlosser. The combination of reasons underlying Time Warner's decision at the very least demonstrates that age was not the but-for reason Schlosser was not hired.

Schlosser characterizes the various reasons underlying Time Warner's refusal to hire him as "shifting explanations" that constitute pretext. The Second Circuit has held that "[i]nconsistent or even post-hoc explanations for [an adverse employment] decision may suggest discriminatory motive." Weiss v. JPMorgan Chase & Co., 332 Fed. Appx. 659, 663 (2d Cir. 2009). But Time Warner's explanations here, at their core, relate to one thing: Schlosser's poor performance as Direct Sales Manager. See McGuire-Welch v. House of the Good Shepherd, 2016 WL 6581286, at *6 (N.D.N.Y. Nov. 4, 2016) ("evidence does not show that defendants' reason for terminating shifted or was inconsistent."). After interviewing for the Territory Sales Representative position, Schlosser was told that the company was "very impressed with his background, but they decided to go in another direction" (Opp. at 18); interviews for other positions fell through because he was "being investigated by Time Warner" (Opp. at 18); he was foreclosed from other positions because of past performance issues (Opp. at 19); and finally, he was disqualified from certain entry-level positions because Time Warner believed that would be "disruptive for the sales group." (Opp. at 19.)

At the heart of each of those reasons is Time Warner's concern about hiring a former employee with a record of poor supervisory, managerial, and performance issues. There is no genuine issue regarding Schlosser's previous performance. Schlosser does not dispute that he was given a poor performance evaluation as Direct Sales Manager, nor does he object to the substance or accuracy of that evaluation. Moreover, the Final Written Warning he received memorialized a serious issue with Schlosser's performance—namely that he mismanaged his sales team through a failure to safeguard against sales fraud. (SMF ¶ 11.) The evaluation also noted that Schlosser was not "'locked in' to the overall detail" expected of a successful manager, and that Schlosser exhibited a lack of "self-accountability and supervisor accountability" and

-11-

"core managerial and leadership behaviors." (SMF ¶ 12–13.) Thus, the varying reasons proffered by Time Warner are threaded together by one undisputed fact—Schlosser's performance. Singh v. Air India Ltd., 108 Fed. Appx. 9, 10 (2d Cir. 2004) (company's reasons for termination "were related. That different [defendant] managers provided different but consistent economic explanations for [plaintiff's] termination does not demonstrate that the company's explanation was pretextual."); Roge v. NYP Holdings, Inc., 257 F.3d 164, 170 (2d Cir. 2001) ("variations" regarding elimination of position relate to "the same theme rather than separate inconsistent justifications.").

II. NYCHRL

As an initial matter, it appears that Time Warner did not seek dismissal of the NYCHRL claim in its moving brief. Having failed to raise them at the outset, the arguments Time Warner raises belatedly in its reply brief are effectively waived. Rosario v. New York City Dept. of Homeless Servs., 2008 WL 449675, at *8 (S.D.N.Y. Feb. 19, 2008); Fisher v. Kanas, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007).

But assuming, arguendo, that Time Warner's NYCHRL arguments are not waived, Time Warner fails to establish that there is no dispute of material fact under relevant law. The NYCHRL "requires that courts give the statute an independent and more liberal construction than its federal and state counterparts." Sotomayor v. City of New York, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012). The NYCHRL's elements differ materially from those under the ADEA. For example, a "plaintiff need not show that an employment action was materially adverse" and must "simply how that she was treated different from others in a way that was more than trivial, substantial, or petty." Sotomayor, 862 F. Supp. 2d at 258. Moreover, the "inference of discrimination prong of the prima facie case is satisfied if a member of a

protected class was treated differently than a worker who was not a member of that protected class." Sotomayor, 862 F. Supp. 2d at 258 (alterations omitted).

Most importantly, the "'but-for' causation standard does not apply to age discrimination claims brought under the NYCHRL. Rather, the NYCHRL requires only that a plaintiff prove that age was 'a motivating factor' for an adverse employment action." Weiss v. JPMorgan Chase & Co., 2010 WL 114248, at *1 (S.D.N.Y. Jan. 13, 2010). Accordingly, Schlosser is required under the NYCHRL to "prove by a preponderance of the evidence that his age was a 'motivating factor' in" Time Warner's decision not to hire him. Weiss, 2010 WL 114248, at *4.

While the record evidence falls short of raising a genuine dispute regarding whether age was a but-for cause of Time Warner's refusal to hire Schlosser, it is sufficient for purposes of asserting a claim under the NYCHRL. Here, Schlosser was rejected repeatedly from both managerial and entry level positions, most of which were offered to applicants substantially younger than Schlosser. His sole interview appears to have been given on the basis of a "formality" without much regard for his qualifications. And while the brevity and substance of that interview do not create a factual dispute as to whether his age was the controlling reason why he was not hired, they may create a genuine dispute when analyzed under the NYCHRL's liberal standard—that Schlosser's age was in part, a motivating factor, underlying Time Warner's decision to pass on him. See Gorman v. Covidien, LLC, 2015 WL 7308659, at *12 (S.D.N.Y. Nov. 19, 2015).

Having dismissed Schlosser's federal claim, however, this Court declines to exercise jurisdiction over his NYCHRL claim. That claim is dismissed without prejudice to re-filing it in state court.

## CONCLUSION

Accordingly, Time Warner's motion for summary judgment is granted. The Clerk of Court is directed to terminate the motion pending at ECF No. 51 and mark this case as closed.

Dated: June 6, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.